## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **SONIA MARQUEZ, o/b/o E.O.M.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )   **Case No. CIV-05-974-M** |
| | ) |
| **JO ANNE B. BARNHART,** | ) |
| **Commissioner, Social Security** | ) |
| **Administration,** | ) |
| | ) |
| **Defendant.** | |

## REPORT AND RECOMMENDATION

Sonia Marquez ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for supplemental security income payments on behalf of her minor child, E.O.M., under the Social Security Act.  This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B).  Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be affirmed.

## Administrative Proceedings

Plaintiff initiated these proceedings in June, 2003, by filing a claim seeking supplemental security income payments on behalf of E.O.M., alleging that the E.O.M. had been disabled since April 16, 1995 – his birth date –  due to asthma which rendered him unable to run [Tr. 39 - 40 and 42].  Plaintiff's claims were denied; she subsequently sought and received a de novo hearing before an administrative law judge ("ALJ") who heard testimony from Plaintiff – appearing with a Professional Social Security Disability Representative [Tr. 138] – and E.O.M. [Tr. 30 - 32, 34 - 36, 37 and 201 - 214].  In his

February, 2005 hearing decision, the ALJ found that E.O.M.'s impairments did not meet or equal a listed impairment[1] – medically or functionally – and, consequently, determined that E.O.M. was not disabled within the meaning of the Social Security Act [Tr. 17 - 22].   The Appeals Council of the Social Security Administration declined Plaintiff's request for review, and Plaintiff subsequently sought review of the Commissioner's final decision in this court [Tr. 4 - 9].

## Standard of Review

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.   *Doyal v. Barnhart,* 331 F.3d 758, 760 (10th Cir. 2003).   Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial.   "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion."   *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted).   "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."   *Id.* at 299.

## Determination of Disability

The Social Security Act provides that "[a]n individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or

---

[1]*See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Part B.

2

mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c (a) (3) (c) (I). The Commissioner applies a three-step sequential inquiry to determine whether an individual under the age of 18 is disabled. *See* 20 C.F.R. § 416.924 (a). At the first step, it is determined whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924 (b). If not, the inquiry continues to the second step for consideration of whether the child has a severe medically determinable impairment(s). 20 C.F.R. § 416.924 (c). If so, the question at the third step is whether such impairment(s) meets, medically equals, or functionally equals a listed impairment. 20 C.F.R. § 416.924 (d). A finding that a child is not disabled is made if the impairment(s) does not meet the twelve-month duration requirement or if the impairment does not meet, medically equal, or functionally equal the listings. 20 C.F.R. § 416.924 (d) (2).

Here, the ALJ found at step one that E.O.M. had not engaged in substantial gainful activity and, at step two, determined that he suffered from a severe, medically determinable impairment [Tr. 18]. He further concluded that E.O.M.'s "condition does not meet or equal the criteria for any impairment listed in Appendix 1, Subpart P, Part 404." *Id.* Finally, after evaluating Plaintiff's credibility with respect to claims of E.O.M.'s functional limitations and restrictions of activities, the ALJ determined that, while severe, E.O.M.'s impairment did not functionally equal any listing [Tr. 20 - 21].

**Plaintiff's Claims of Error**

As her initial claim of error, Plaintiff maintains that the ALJ's analysis at step three

of the foregoing sequential evaluation was deficient as a matter of law and not supported by substantial evidence.  Specifically, Plaintiff argues that "the ALJ erred as a matter of law when he merely stated a bare conclusion that Plaintiff's impairments do not meet or medically equal a listing, instead of completing a proper step three analysis." [Doc. No. 19, p.7].  She further argues that E.O.M.'s asthma attacks meet Listing 103.03B or, in other words, are of "listing-level severity."  Plaintiff does not, however, specifically argue that the ALJ erred in his determination with respect to the functional equivalency to the lsiting.

Plaintiff's other claim is that "the ALJ failed to make the appropriate credibility findings of the testimony by the claimant or his mother." *Id.* at p. 9.

**Listing 103.03B and Analysis of the ALJ's Decision**

The listing for asthma in children is Listing 103.03.  20 C.F.R. Part 404, Subpart P, Appendix 1, Part B, §103.03.   The regulation provides that the listing is met when a claimant has asthma along with one of the conditions specified in four paragraphs – A through D - of the listing.  Paragraph B of Listing 103.03 – the listing that Plaintiff argues has been met by E.O.M.  –  requires medical evidence[2] of

> Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year.  Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determined the frequency of attacks[.]

20 C.F.R. Part 404, Subpart P, Appendix 1, Part B, §103.03B.  What constitutes an

---

[2]"Respiratory disorders, along with any associated impairments(s) must be established by medical evidence."  20 C.F.R. Part 404, Subpart P, Appendix 1, Part B, §103.00A.

"attack" for listing level purposes is described in 20 C.F.R. Part 404, Subpart P, Appendix

1, Part A, §3.00C:

> Attacks of asthma . . . are defined as prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalation bronchodilator therapy in a hospital, emergency room or equivalent setting.

20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, §3.00C.

In making his evaluation of the evidence of record, the ALJ referenced E.O.M.'s

treatment history for various maladies, including stomachache, coughing, asthma, asthma

exacerbation, gastroenteritis, acute asthma exacerbation, acute viral syndrome,

bronchitis, rash, impetigo and pneumonia.[3]   After pinpointing each of E.O.M.'s

examinations – and the resulting diagnosis – from February 7, 2001, to February 9, 2004,

the ALJ concluded that E.O.M's condition did not meet or medically equal the criteria for

any listed impairment [Tr. 18].  Plaintiff maintains, however, that, "[E]ach time E.O.M.

was taken to the emergency room, the records indicated that he complained of difficulty

breathing or coughing for multiple  days [and that] [t]he treatment records indicate he

was prescribed bronchodilators, such as albuterol."[4] [Doc. No. 19, p. 8].  Thus, according

to Plaintiff, E.O.M. suffered from asthma attacks as defined in §3.00C.  Moreover, Plaintiff

contends that E.O.M. suffered the number of attacks – at least every two months or six

---

[3]The ALJ repeated the finding of the State agency physicians that, "Although the record reflects many visits to the emergency room for asthma, it is clear that the emergency room is being used as a treating source." [Tr. 21, 74, and 135].

[4]Many of E.O.M.'s examination records reflect that he was, indeed, prescribed bronchodilators for home use.  Nonetheless, the regulation plainly requires that in order to be defined as an asthma attack, the record of such claimed attack must reflect prolonged inhalation bronchodilator therapy in a hospital or emergency room.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, §3.00C.

times a year – required by Listing 103.03.

The undersigned has examined each of E.O.M.'s examination/treatment records and notes as follows:

(1)     February 7, 2001 - Progress Record - Memorial Hospital of Texas County [Tr. 80 and 143].

E.O.M. complained that his stomach hurt and that he had been coughing for one day.  Asthma was either diagnosed or recorded as history.

There is no indication that E.O.M.'s condition required the intensive treatment mandated by 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, §3.00C – intravenous bronchodilator, antibiotic administration or prolonged inhalation bronchodilator therapy – and, consequently, cannot count as an asthma attack.

(2)     April 7, 2001 - Emergency Physician Record - Memorial Hospital of Texas County [Tr. 185 - 189].

E.O.M. arrived at 1005 complaining of coughing, trouble breathing, wheezing and asthma.  Physical examination showed him to be in no acute distress.  He was discharged at 1055 after "SVN" treatment.  According to information available on the world wide web, "SVN" is a common medical abbreviation for "Small Volume Nebulizer."  *See* www.pharma-lexicon.com.  Whether or not this could be described as prolonged inhalation bronchodilator therapy and whether or not treatment beginning at 1015 [Tr. 189] and concluding sometime before discharge at 1055 could be considered prolonged, the undersigned has considered this episode, as did the ALJ [Tr. 18], as an asthma exacerbation, or attack, for purposes of the applicable regulations.

(3)     <u>May 17, 2001 - Emergency Physician Record - Memorial Hospital of Texas County</u> [Tr. 182 - 184].

E.O.M. arrived at 0845 complaining of cough and congestion over the previous two days.  His mother also reported a blister on his hand from swinging on the monkey bars at school.  While use of a SVN was referenced as E.O.M.'s current method of medication as needed, there is no indication that he was given treatment in the emergency room.  Rather, he was discharged as 0950 with prescriptions and instructions.  The examining physician noted asthma exacerbation, as did the ALJ [Tr. 18].  Nonetheless, even with the undersigned likewise labeling this episode an asthma attack, both this episode and the episode in April, 2001, occurred more than two years prior to the filing of this claim on behalf of E.O.M. and, because the next record of treatment is not until September 5, 2002, neither would contribute to meeting the frequency requirements of Listing 103.03.

(4)     <u>September 5, 2002 - Emergency Room - Outpatient Record - Memorial Hospital of Texas County</u> [Tr. 123 - 129 and 176 - 180].

E.O.M. arrived at 0847 complaining of an asthma attack.  The clinical assessment was asthma exacerbation.  It appears E.O.M. was medicated in the emergency room: "xopenex/atrovent nebulizer." [Tr. 125 and 177].  Once again, whether or not this treatment could be characterized as prolonged[5] inhalation bronchodilator therapy is debatable, but, as did the ALJ [Tr. 18], the undersigned will identify the episode as an asthma exacerbation or attack.

(5)     <u>October 27, 2002 - Emergency Room - Outpatient Record - Memorial Hospital of</u>

---

[5]E.O.M. was discharged at 0937 [Tr. 126 and 178].

Texas County [Tr. 116 - 122 and 170 - 175].

E.O.M. was treated for acute gastroenteritis with asthma mentioned only by history.

(6)    November 7, 2002 - Emergency Room - Outpatient Record - Memorial Hospital of Texas County [Tr. 109 - 115 and 165 - 169].

E.O.M. was given respiratory therapy for acute asthma exacerbation.  The ALJ characterized this as an episode of acute asthma exacerbation [Tr. 18] as, in conformance with previous determinations, does the undersigned.

(7)    January 7, 2003 - Emergency Room - Outpatient Record - Memorial Hospital of Texas County [Tr. 102 - 108 and 158 - 163].

E.O.M. was given respiratory therapy for a condition diagnosed as asthma and an acute viral syndrome.  Even though E.O.M. was only having mild trouble with breathing [Tr. 105 and 160], because respiratory therapy was given the episode will be labeled by the undersigned as an asthma attack.

(8)    January 13, 2003 – Emergency Room - Outpatient Record - Memorial Hospital of Texas County [Tr. 97 - 101 and 155 - 157].

E.O.M. was diagnosed with bronchitis with asthma mentioned by history.  There is no indication of any breathing treatment during this emergency room visit.

(9)    January 28, 2003 - Progress Record - Memorial Hospital of Texas County [Tr. 80 and 143].

E.O.M. was seen for a rash on his arms, back and face; asthma was reported by history.

(10)  <u>April 10, 2003 -  Emergency Room - Outpatient Record - Memorial Hospital of Texas County</u> [Tr. 93 - 96 and 153 - 154].

Although this record is difficult to read, it appears the E.O.M. presented with difficulty in breathing and was triaged as urgent.  He was diagnosed with acute asthma exacerbation and it appears that some form of breathing treatment was given.  The undersigned labels the episode as an asthma attack or exacerbation as it was identified by the ALJ.[6]

(11)  <u>June 17, 2003 - Progress Record - Memorial Hospital of Texas County</u> [Tr. 79 and 142].

E.O.M. presented with coughing "so much he throws up." *Id.*  He reported that he had asthma and requested refills of his medications for his machine and his inhaler.  There is no indication that any of the treatment specified by the regulations was provided.

(12)  <u>June 22 and 23, 2003 - Emergency Room - Outpatient Record - Memorial Hospital of Texas County</u> [Tr. 148 - 152].

E.O.M. presented to the emergency room with a rash and an insect bite.  He was diagnosed with impetigo.

(13)  <u>August 4, 2003 - Progress Record - Memorial Hospital of Texas County</u> [Tr. 79 and 142].

E.O.M. reported coughing and pain in his chest.  While asthma was referenced, the requisite treatment was not.

---

[6]The ALJ mistakenly referred to the date of treatment as April 16, 2003 [Tr. 18].

9

(14)  <u>September 15, 2003 - Progress Record - Memorial Hospital of Texas County</u> [Tr. 78 and 141].[7]

E.O.M. was coughing and wheezing with fever.  Once again, there is no record of treatment with this entry.

(15)  <u>September 21, 2003 - Progress Record - Memorial Hospital of Texas County</u> [Tr. 81 - 86 and 144 - 147].

E.O.M. was diagnosed with mild pneumonia and asthma and was given antibiotics.  There is no indication of any inhalation bronchodilator therapy.

(16)  <u>January 15, 2004 - Progress Record - Memorial Hospital of Texas County</u> [Tr. 140].[8]

Fever, coughing, a rash and difficulty in breathing was noted.  Again, asthma is mentioned but treatment at the facility is not.

(17)  <u>February 9, 2004 - Progress Record - Memorial Hospital of Texas County.</u>  *Id.*

Cough and asthma were the complaints, but there is no indication of a breathing treatment.

* * *

Plaintiff argues that, "The above medical records show that after September 5, 2002, E.O.M. was treated for asthma attacks an average of six times per year.  He was treated six times for asthma attacks between September 5, 2002 and August 4, 2003."  [Doc. No. 19, p.4].  While E.O.M.'s asthma was referenced in each of the records identified by Plaintiff to support this argument – Tr. 176 (September 5, 2002); Tr. 165

---

[7]The ALJ read the record as dated September 5, 2003 [Tr. 18].

[8]The ALJ noted January 8, 2004, as the date of this examination [Tr. 18].  It is difficult to decipher whether the date is the 8th, the 15th or the 18th.

(November 7, 2002); Tr. 158 (January 7, 2003); Tr. 153 (April 10, 2003); Tr. 142 (June 17, 2003); and, Tr. 142 (August 4, 2003) – in only four[9] of the six emergency room/hospital encounters was E.O.M. treated for an asthma "attack" as defined by regulation.  Plaintiff's other attempt to establish the frequency requirement also fails.  There, Plaintiff argues that, "Similarly, the latest treatment record is dated February 9, 2004, and in the year prior to that date E.O.M. was treated six times for asthma attacks." [Doc. No. 19, p. 4].  Once again, although the word "asthma" was used in each of the records upon which Plaintiff relies – Tr. 153 (April 10, 2003; Tr. 142 (June 17, 2003); Tr. 142 (August 4, 2003); Tr. 81 (September 21, 2003); Tr. 140 (January 15, 2004); and, Tr. 140 (February 9, 2004) – the only "attack" as prescribed by regulation occurred on April 10, 2003.  Accordingly, substantial evidence supports the determination by the ALJ that E.O.M.'s condition does not meet or medically equal the criteria for a listed impairment.

Apart from her argument that the evidence of record established that E.O.M.'s condition met the requirements of Listing 103.03B, Plaintiff also maintains that the ALJ erred as a matter of law by failing to complete "a proper step three analysis." [Doc. No. 19, p.7].  Relying on the decision in *Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir. 1996), Plaintiff urges that ALJ failed to discuss the evidence and explain why Plaintiff was not disabled at step three of the sequential process.

Contrary to Plaintiff's argument, the ALJ's decision specifies that Plaintiff sought benefits for a child suffering from asthma [Tr. 17].  The ALJ then discussed *each* of the

---

[9]The undersigned's review of the treatment records revealed that the regulatory definition of an asthma "attack" was met on September 5, 2002, November 7, 2002, January 7, 2003, and April 10, 2003, but not on either June 17, 2003, or August 4, 2003.

seventeen sets of medical records, specifically identifying where E.O.M. was treated for an asthma exacerbation, where he was seen only for his asthma condition and where he was seen for other ailments [Tr. 18]. The ALJ determined that only five of the seventeen medical encounters were for an asthma exacerbation or what the undersigned called an asthma "attack" in the foregoing review.[10] The ALJ then stated – "[b]ased on the record" – that E.O.M.'s condition did not meet or medically equal the criteria for any listed impairment. *Id.* The ALJ did not identify Listing 103.03B by number, but having been directed by the ALJ to the listing for a childhood asthma condition and specifically to Paragraph B of the listing by his isolation of the five treatments for asthma exacerbation, the pertinent listing requirements, along with the ALJ's analysis of the medical evidence, were readily reviewable. Error, if any, committed by the ALJ at step three of the sequential process was harmless. *See also Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005) ("[W]here an ALJ provides detailed findings . . . that confirm rejection of the listings in a manner readily reviewable, requiring reversal would extend *Clifton* beyond its own rationale[;] [n]either *Clifton's* letter nor spirit require a remand for a more thorough discussion of the listings when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review.") (emphasis added.)). The ALJ's determination at step three was legally sound and is supported by substantial evidence of record.

---

[10]The undersigned found six episodes which could be construed as asthma attacks, differing with the ALJ only on the January 7, 2003, emergency room treatment and only because E.O.M., who was then suffering from an acute viral syndrome in addition to asthma, was given a breathing treatment [Tr. 102 - 108 and 158 - 163]. Nonetheless, as discussed in detail above, even had ALJ likewise deemed the January 7, 2003, episode to be an exacerbation or attack, the frequency requirement would still not have been met.

**Credibility**

As stated above, Plaintiff made no challenge to the ALJ's determination at step three that E.O.M.'s asthma impairment, while severe, did nor functionally equal a listing. Instead, her objection was to the ALJ's analysis – both legal and evidentiary – of the medical findings on which "[e]quivalence to a listed impairment must be based." *Houston v. Chater,* No. 96-6223, 1997 WL 12828, at *1 (10th Cir. Jan. 15, 1997) (unpublished op.).[11]  Nonetheless, as her second claim of error, Plaintiff challenges the ALJ's credibility findings – made in connection with functional equivalency – as legally deficient.  Specifically, Plaintiff alleges that the ALJ failed to make the requisite link between his credibility determination and the evidence of record.

Credibility determinations are within the province of the finder of fact – the ALJ – and will not be upset on judicial review when supported by substantial evidence.  *Diaz v. Secretary of Health and Human Services,* 898 F.2d 774, 777 (10th Cir. 1990); *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995).  In making his credibility assessment, the ALJ first considers whether Plaintiff has established a symptom-producing impairment by objective medical evidence and, if so, whether there is a nexus between such impairment and Plaintiff's subjective allegations of pain or other limiting symptoms.  If both of these conditions are met, the ALJ then determines, after considering both the objective and subjective evidence, whether Plaintiff's pain or other symptom is disabling.  *Luna v. Bowen,* 834 F.2d 161, 163 (10th Cir. 1987).  The guidelines for this determination were explained by the ALJ:

---

[11]This unpublished disposition is cited as persuasive authority pursuant to Tenth Circuit Rule 36.3.

> In addition to the objective medical evidence, consideration must be given
> to other determinants in assessing credibility.  Such factors include daily
> activities; location, duration, frequency, and intensity of pain and other
> symptoms; factors that precipitate and aggravate the symptoms; type,
> dosage, effectiveness and side effects of any medication being taken or that
> was taken to alleviate pain or other symptoms; treatment, other than
> medication, that is being received or was received for relief of pain or other
> symptoms; any measures other than treatment that is being used or was
> used to relieve pain or other symptoms; and any other factors concerning
> the functional limitations and restrictions due to pain and other symptoms
> (SSR 96-7p).

[Tr. 20].  Then, with respect to Plaintiff's claim on behalf of E.O.M., the ALJ continued:

> Claimant's assertions relative to symptomatology, pain, functional
> limitations and restrictions on activities of daily living have been
> considered in light of the factors set forth in 20 CFR 416.929 and SSR 96-
> 7p, are exaggerated, are found to lack corroboration or substantiation in the
> medical evidence, are inconsistent or contradictory as evidenced by the
> medical record and testimony, are a result of non-compliance with
> mediation or treatment regimen, and are not credited.

*Id.*

Plaintiff maintains that this was "the entirety of the ALJ's discussion of
credibility." [Doc. No. 19, p.10].  This is simply not correct.  Plaintiff's stated reason for
requesting a hearing before the ALJ was that "[E.O.M.] has a severe impairment - does not
function as other children his age." [Tr. 37].  Plaintiff reported to the Social Security
Administration in a Function Report that E.O.M. could not run or swim [Tr. 57].  In
requesting reconsideration of an initial claim denial, Plaintiff reiterated that E.O.M. could
not run and that he "[d]oes a breathing machine 4 hrs a day." [Tr. 62].  The ALJ, in
connection with his determination of whether E.O.M. did, in fact, suffer from these and
other disabling functional limitations, assessed the credibility of Plaintiff's assertions
utilizing the factors he had previously referenced.  As far as E.O.M.'s daily activities, the

ALJ found with respect to school attendance that E.O.M. was in 4th grade although, chronologically, he should have been in 5th grade [Tr. 20].  He noted testimony that this was so because the family had gone to Mexico for one year [Tr. 20 and 204].  The ALJ found that E.O.M. was able to ride a bike and swim [Tr. 20 and 206 - 207].  In addition, E.O.M. testified that he *can* run but must eventually stop because of his breathing [Tr. 20 and 205]. Moreover, the ALJ found that E.O.M. relates well with others – he testified that he plays with his brothers [Tr. 206] – and he takes care of his personal needs [Tr. 20 and 69].  With respect to E.O.M.'s medications, the ALJ noted that Plaintiff testified that E.O.M. takes one pill a day, that he sometimes uses an inhaler and that he uses a nebulizer only two times – forty-five minutes each –  a week and only in the winter [Tr. 20 and 209 - 210].  Finally, with respect to E.O.M.'s general functional restrictions due to asthma, the ALJ repeated Plaintiff's testimony that while E.O.M. had been diagnosed with asthma when he was one year old, it was calming down as he grew older [Tr. 21 and 212].

The ALJ's credibility findings are specific, are linked to the evidence of record and are far from "boilerplate" as Plaintiff maintains; his assessment of Plaintiff's credibility was legally sufficient.

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the foregoing reasons, it is recommended that the final decision of the Commissioner be affirmed. The parties are advised of their right to object to this Report and Recommendation by October 20, 2006, in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1.  The parties are further advised that failure to make timely objection to

this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 29th day of October, 2006.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE